# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| AVERY D. ENSLEY | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-0183-S |
| | § | |
| GENWORTH LIFE AND ANNUITY | § | |
| INSURANCE COMPANY | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Genworth Life and Annuity Insurance Company's Motion

for Partial Summary Judgment ("Motion") [ECF No. 20]. The Court has reviewed the Motion, the

Brief in Support of Defendant's Motion for Partial Summary Judgment ("Defendant's Brief")

[ECF No. 21], Plaintiff Avery D. Ensley's Response to Defendant's Motion for Partial Summary

Judgment ("Response") [ECF No. 23], Plaintiff's Brief in Support of Response to Defendant's

Motion for Partial Summary Judgment ("Plaintiff's Brief") [ECF No. 24], Defendant's Reply Brief

in Support of Its Motion for Partial Summary Judgment ("Reply") [ECF No. 28], the summary

judgment evidence presented, *see* Def.'s App. [ECF No. 22]; Pl.'s App. [ECF No. 25], and the

applicable law. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN**

**PART.**

### I. BACKGROUND

Plaintiff brought this suit to remedy the lapse of his life insurance policy. On January 3,

1991, Plaintiff purchased a life insurance policy ("Policy") from Federal Home Life Insurance

Company. Plaintiff's Second Amended Complaint ("Compl.") [ECF No. 17] ¶ 7; Mot. 2. In 2007,

Federal Home Life Insurance Company merged into Defendant, and Defendant assumed

responsibility for the Policy. Mot. 1 n.1; *see also* Compl. ¶ 8. Plaintiff's monthly premium was

$151. Compl. ¶ 12. Plaintiff paid this amount via monthly automatic withdrawals pursuant to a

written agreement to deduct the payments from a designated bank account. *Id.* ¶¶ 12-13; Mot. 5. In 2007, Plaintiff submitted a request to withdraw the "[m]aximum loan value in accordance with the terms of" the Policy. Def.'s App. 29-30. Defendant complied with this request and issued Plaintiff a loan. Mot. 6.

On or about January 3, 2019, Plaintiff received an Annual Report for the Policy ("2019 Annual Report"), which stated, among other things, that "[a]ssuming any loan balance is repaid, no withdrawals are taken or increases made," the Policy would remain in effect through July 3, 2021, if Plaintiff paid the required premiums. Def.'s App. 58; Compl. ¶¶ 14, 16. The 2019 Annual Report reflected that Plaintiff had unpaid loans in the amount of $22,510.09 and showed that the Policy's surrender value[1] was $1,591.66. Def.'s App. 58.

Prior to the due date for the October 2019 monthly premium, Defendant terminated Plaintiff's automatic withdrawals. Compl. ¶ 17. On or about October 22, 2019, Defendant sent Plaintiff a letter advising Plaintiff that the Policy's "cash value was not sufficient to cover the monthly cost of insurance on [his] policy due on 10/03/19" and that, as a result: (1) the Policy had entered "the Grace Period"; and (2) Defendant had discontinued automatic withdrawals. Def.'s App. 42; *see also* Compl. ¶¶ 18-19. The letter further informed Plaintiff that the Policy would lapse without value unless he made a minimum payment of $1,534 by December 11, 2019. Def.'s App. 42. Plaintiff and his wife, Karen Ensley, received the letter "sometime between the date on the letter and the end of December," Def.'s App. 92, and Karen Ensley placed it in a pile of mail to be opened later. *Id.* at 92-93; *see also* Compl. ¶ 32. Neither Plaintiff nor his wife read the letter until January 1, 2020. Def.'s App. 93, 96; *see also* Compl. ¶ 32.

---

[1] According to the version of the Policy submitted by Defendant, the surrender value is equal to the accumulated value on the date of surrender, less any outstanding loans and any surrender charges. Def.'s App. 148.

On December 6, 2019—five days before the stated deadline to make the minimum payment—Defendant canceled the Policy. Compl. ¶ 33. In a letter dated December 6, 2019, Defendant informed Plaintiff that the Policy had lapsed as of October 3, 2019, because "[w]e did not receive the premium due on the [P]olicy within its grace period." Def.'s App. 43. The letter invited Plaintiff to apply for reinstatement of the Policy if he desired to do so. *Id.* Again, Karen Ensley placed this letter in a pile of mail to be opened later and did not open it until January 1, 2020. *Id.* at 93, 96.

On January 2, 2020, Karen Ensley contacted Defendant and asked to "issue payment for the premium deficit" and reinstate the Policy. Compl. ¶ 36; *see also* Def's App. 97. Defendant refused. Compl. ¶ 36; Def.'s App. 97, 109. Plaintiff then applied for reinstatement, but Defendant denied his application and informed Plaintiff that he was no longer insurable at the previous rate of classification. Compl. ¶¶ 38-39; Def.'s App. 44-48, 51. Plaintiff did not submit the outstanding $1,534 payment in connection with his reinstatement application. Def.'s App. 88, 95.

Based on the foregoing, Plaintiff brought claims for breach of contract, promissory estoppel (in the alternative), violations of Chapter 541 of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of the duty of good faith and fair dealing, and equitable relief. Defendant now moves for partial[2] summary judgment, seeking judgment in its favor on all of Plaintiff's claims.

## II.      LEGAL STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination,

---

[2] Defendant brought a counterclaim for attorney's fees and costs that is not subject to the Motion.

courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, he "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) showing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322-25. Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[C]onclusory statements, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010). The Court resolves factual controversies in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (citing *McCallum Highlands, Ltd. v. Wash. Cap. Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## III.     ANALYSIS

### A.     *Evidentiary Objections*

Before turning to Defendant's substantive arguments in support of its Motion, the Court must consider the parties' evidentiary objections. Plaintiff devotes the bulk of its responsive briefing to challenging Defendant's summary judgment evidence. First, Plaintiff challenges the

4

copy of the Policy submitted by Defendant. Plaintiff argues that it was created for litigation and thus should not be considered, is inadmissible under the best evidence rule, and "suffers from massive indicia of unreliability." Pl.'s Br. 22. Second, Plaintiff challenges the Declaration of Amanda Gallo,[3] which Defendant uses to authenticate certain exhibits.[4] According to Plaintiff, Gallo is an "improper, third-party affiant," and thus her declaration cannot be used to overcome authentication and hearsay challenges. Pl.'s Br. 9. Third, Plaintiff argues that the calculations in the 2019 Annual Report are inadmissible hearsay.

In its Reply, Defendant objects to portions of the two declarations submitted by Plaintiff, arguing that the Court should not consider the parts of the Declaration of Brian Benitez that amount to conclusory allegations, set forth legal conclusions, and reflect "self-serving and unsupported statements." Reply 13-14. Defendant also contends that the Court should not consider the portions of the Declaration of Karen Ensley that impeach her prior deposition testimony without explanation. The Court considers the parties' arguments in turn.

### i.    Plaintiff's Objections

The crux of Plaintiff's argument in opposition to Defendant's Motion is that the Court should not consider the copy of the Policy submitted by Defendant and that, without the Policy, the Court must find that a genuine issue of material fact remains. Plaintiff claims that Defendant's copy of the Policy is "a document created for litigation by an unknown person(s)," Pl.'s Br. 8, and

---

[3] Gallo works for DXC International, a third-party administrator for Defendant. Def.'s App. 120 ¶ 1.

[4] Plaintiff's objections are focused on the exhibits Defendant attempts to authenticate through Gallo's Declaration. *See* Pl.'s Br. 15 (requesting "that the Court set aside the affidavit [and] find that all the documents attached thereto are unauthenticated hearsay" and arguing that "all the documents attached to the Declaration are hearsay"). Therefore, the Court presumes that Plaintiff does not object to its consideration of the exhibits authenticated by Plaintiff's and Karen Ensley's depositions and/or submitted by Plaintiff himself as attachments to an affidavit signed by Karen Ensley. These exhibits include: (1) the October 22, 2019, letter, *see* Def.'s App. 42, 92; ECF No. 1-3 at 19; (2) the December 6, 2019, letter, *see* Def.'s App. 43, 93; ECF No. 1-3 at 22; (3) the reinstatement application, *see* Def.'s App. 44-50, 98; and (4) the notice of underwriting decision, *see* Def.'s App. 51-53, 100. If Plaintiff intended to object to those exhibits, the Court overrules the objections.

that "the method or circumstances of the preparation of" the copy of the Policy submitted by Defendant "lack[s] . . . trustworthiness," *id.* at 9. Defendant replies that Plaintiff lost the original of the Policy, so Defendant "prepare[d] a replica copy of what it reasonably believed the . . . Policy looked like." Reply 11. Plaintiff objects to Defendant's version of the Policy on many grounds; however, the Court concludes that the best evidence rule is dispositive and thus will only consider that argument.

Under the best evidence rule, Defendant must submit the original of the Policy unless, as relevant here, Defendant can show that "all the originals are lost or destroyed, and not by the proponent acting in bad faith." FED. R. EVID. 1002, 1004(a). If Defendant makes this showing, it "is relieved of the burden of producing the original and can present secondary evidence of its contents." *Klein v. Frank*, 534 F.2d 1104, 1107-08 (5th Cir. 1976). Here, the Court finds that Defendant has adequately proved that the original version of the Policy has been lost, and not by Defendant acting in bad faith. Defendant relies on Karen Ensley's deposition testimony that the original was delivered to the Ensleys, and they do not know what happened to it. *See* Def.'s App. 72, 105; *see also* Pl.'s Br. 25 ("The affidavits of Karen Ensley and [Plaintiff] state with specificity that after a diligent search, they cannot find the copy of the Original 1991 Policy." (citing Pl.'s App. 1-3)). In the same deposition, Karen Ensley stated that Plaintiff's attorney represented to Defendant that Plaintiff had "misplaced his policy." Def.'s App. 104. Therefore, the Court concludes that Defendant is entitled to submit secondary evidence of the Policy's contents. However, the Court further concludes that there remains a fact issue for the jury to decide regarding the Policy's contents. *See, e.g.*, *Smith v. ProCollect, Inc.*, No. 6:09-CV-350, 2011 WL 13196166, at *4 (E.D. Tex. Jan. 3, 2011) ("Whether[] the two form letters correctly reflect the contents of the

November 10, 2008 letter is an issue for the trier of fact to determine; therefore, a genuine dispute as to a material fact remains.").

To the extent Plaintiff objects to Defendant's replica Policy on other grounds, the Court overrules these objections as moot. The Court's rulings below are not impacted by the content of the replica Policy. The Court also overrules Plaintiff's remaining evidentiary objections as moot, with the exception of Plaintiff's hearsay and authenticity objections to the 2019 Annual Report. The Court will address these objections where they are relevant in the analysis below.

### ii.    *Defendant's Objections*

In its Reply, Defendant objects to portions of the Declaration of Brian Benitez and the Declaration of Karen Ensley, both of which Plaintiff submitted in support of his Response. Because the Court's rulings on the Motion would not change even if it considered this evidence, the Court overrules these objections as moot.

### B.    *Motion for Partial Summary Judgment*

Having resolved the relevant evidentiary disputes, the Court turns to Defendant's substantive arguments in support of its Motion. Defendant asserts that it is entitled to summary judgment on each of the claims alleged in Plaintiff's Second Amended Complaint. As to the breach of contract and equitable relief claims, Defendant argues that there is no factual dispute regarding whether Defendant breached the Policy and that, as a result, both claims must fail. Next, because the parties do not dispute that the Policy governs the relationship between them, Defendant argues that Plaintiff's promissory estoppel claim is foreclosed as a matter of law. Finally, as to Plaintiff's three remaining extracontractual claims—for violations of the Texas Insurance Code, violations of the DTPA, and breach of the duty of good faith and fair dealing—Defendant first contends that all three are barred by the applicable statutes of limitations. Even if the claims are not time-barred, Defendant attacks Plaintiff's statutory claims, both for failure to provide pre-suit notice and on the

7

merits, and claims it is entitled to summary judgment on the merits of Plaintiff's claim for breach of the duty of good faith and fair dealing.

*i.      Breach of Contract and Equitable Relief*

At the summary judgment stage, courts "may make no credibility determinations." *LegacyRG, Inc. v. Harter*, 705 F. App'x 223, 230 (5th Cir. 2017) (quoting *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016)). Viewing all evidence and drawing all reasonable inferences in the light most favorable to Plaintiff, and acknowledging that there is a fact issue as to the contents of the Policy that forms the basis of Plaintiff's breach of contract claim, the Court finds that genuine issues of material fact exist that preclude the Court from granting the Motion as to Plaintiff's breach of contract claim. *See id.* at 231 (reversing grant of summary judgment on breach of contract claim where there remained "a genuine dispute of material fact"); *see also Tielke v. Bank of Am., N.A.*, 581 F. App'x 408, 412 (5th Cir. 2014) (reversing grant of summary judgment on breach of contract claim where there were "simply too many unanswered questions"). For the same reason, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's claim for equitable relief.

*ii.      Promissory Estoppel*

Defendant is, however, entitled to summary judgment on Plaintiff's alternative claim for promissory estoppel. Plaintiff did not respond to the Motion with respect to the promissory estoppel claim. As such, this claim has been abandoned. *See Holman v. U.S. Bank, N.A.*, No. 3:16-CV-2125-N (BT), 2018 WL 1472554, at *4 (N.D. Tex. Mar. 1, 2018). Moreover, this cause of action was brought "in the alternative," Compl. 11, which the Court presumes means it was brought in the alternative to Plaintiff's breach of contract claim. As stated above, Plaintiff's breach of contract claim survives summary judgment.

8

### iii.    Limitations

Defendant next moves for summary judgment on all of Plaintiff's extracontractual claims, arguing that they are barred by the applicable statutes of limitations. The statute of limitations for all three claims is two years. *See* TEX. INS. CODE § 541.162 (Texas Insurance Code); TEX. BUS. & COM. CODE § 17.565 (DTPA); TEX. CIV. PRAC. & REM. CODE § 16.003(a) (breach of duty of good faith and fair dealing).

In Texas,[5] "[c]auses of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy." *Exxon Corp v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) (citations omitted). "[A] cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred." *Smith*, 932 F.3d at 311 (alteration in original) (citation omitted). The discovery rule is a limited exception to this legal injury rule. *Id.* (citation omitted). Under the discovery rule, accrual of a cause of action is deferred until "the plaintiff discovers or should have discovered, in the exercise of reasonable care and diligence, the nature of the injury." *Id.* at 312 (citation omitted). This exception applies when the "injury is inherently undiscoverable" and "evidence of the injury is objectively verifiable." *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). An injury is inherently undiscoverable "if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." *Smith*, 932 F.3d at 312 (citation omitted). "The Texas Supreme Court has 'restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes.'" *Id.* (quoting *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006)).

---

[5] "As this is a diversity case containing only state-law claims, Texas law governs" the Court's limitations analysis. *Smith v. Travelers Cas. Ins. Co. of Am.*, 932 F.3d 302, 310 (5th Cir. 2019) (citation omitted).

The Texas Legislature codified the discovery rule for claims under the DTPA and Chapter 541 of the Texas Insurance Code. *Gonzales v. Sw. Olshan Found. Repair Co.*, 400 S.W.3d 52, 57-58 (Tex. 2013); *Silo Rest. Inc. v. Allied Prop. & Cas. Ins. Co.*, 420 F. Supp. 3d 562, 584 (W.D. Tex. 2019). "However, when the plaintiff's injury is inherently discoverable, the Fifth Circuit has found the discovery rule inapplicable . . . even if codified into a statute." *Silo Rest. Inc.*, 420 F. Supp. 3d at 585 (citing *Smith*, 932 F.3d at 311-14). "Based upon this binding precedent, federal courts in Texas must apply the inherently discoverable/objectively verifiable two-part test to both statutory and judicially created discovery rules." *Id.*

As the *Silo* court explained, a burden-shifting framework applies when the Court analyzes the accrual of limitations and the discovery rule in a diversity case. To carry its summary judgment burden, Defendant "must establish beyond peradventure that each cause of action in question accrued outside the applicable limitations period." *Id.* at 576 (cleaned up). If Defendant carries its burden, Plaintiff then bears "the burden to show a material factual dispute regarding the timeliness of [his] claims, which may include a showing that the claims are timely through the discovery rule." *Id.*

The bulk of Plaintiff's extracontractual claims resulted in the same legal injury—lapse of the Policy. Specifically, Plaintiff alleges that Defendant engaged in the following unfair acts prohibited by the Texas Insurance Code: (1) unilaterally changing the terms of the Policy; (2) failing to give adequate notice of its intent to cancel the automatic withdrawals of premium payments; (3) failing to provide adequate notice of its intent to place the Policy in a grace period; and (4) failing to provide adequate notice of its intent to terminate the Policy. Compl. ¶ 48. Plaintiff further alleges that Defendant made misrepresentations in the 2019 Annual Report and October 22, 2019, letter. *Id.* ¶¶ 49, 53. Similarly, one of the two DTPA violations Plaintiff alleges is that

Defendant's representations in the 2019 Annual Report "were radically different from the position Defendant took a mere ten months later and which Defendant currently maintains." *Id.* ¶ 69. And Plaintiff's bad faith claim is based on Defendant failing to adequately notify Plaintiff of: premium changes, the Policy's alleged depleted cash value, and the Policy's pending lapse, along with Defendant allegedly failing to proceed with automatic withdrawals until Plaintiff was notified of the deficit and given an opportunity to make the requisite payment. *Id.* ¶¶ 56-59. All of these alleged wrongs culminated in the same legal injury—"the loss of the insurance policy for which Plaintiff paid 28 years of premium." *Id.* ¶ 54; *see also Phila. Life Ins. Co. v. Means*, No. 05-95-01033-CV, 1997 WL 488610, at *8 (Tex. App.—Dallas Aug. 22, 1997, no writ) ("The [plaintiffs] correctly note that [the defendant's] decision to lapse the policy caused them legal injury.").

The Court finds that there is a fact issue regarding limitations. Although Defendant sent Plaintiff advance notice, in October, that the Policy was set to lapse, Defendant represented to Plaintiff that lapse would not occur until December 11, 2019. *See* Def.'s App. 42. But Defendant then notified Plaintiff that his policy had lapsed in a letter dated December 6, 2019. *Id.* at 43. Defendant represents that it "would have accepted any payments it received on or before December 11, 2019." Mot. 8 n.37. And though the letter regarding the Policy's lapse is dated December 6, 2019, Defendant does not provide any evidence regarding when the letter was sent. The fact that Defendant dated the letter December 6, 2019, does not establish that Defendant sent the letter that day. Plaintiff filed suit on December 9, 2021. Given that December 9, 2021, exceeds the end of Defendant's proposed two-year limitations period by mere days and the lack of clarity

on the date Defendant sent notice of the Policy's lapse, the Court cannot conclude at this stage that Defendant has conclusively established when Plaintiff's causes of action accrued.[6]

Two of Plaintiff's claims are not subject to the above analysis. Plaintiff's second basis for his DTPA claim is that Defendant "assigned underwriters to obtain favorable, results-oriented reports, and to assist Defendant in denying renewal or reinstatement of Plaintiff's life insurance policy." Compl. ¶ 66(f). And Plaintiff alleges that Defendant breached its duty to deal fairly and in good faith with Plaintiff when Defendant refused to reinstate the Policy. Id. ¶ 60. Defendant does not dispute that the claims based on reinstatement were timely filed.

However, Defendant argues that even if Plaintiff's claims are not barred by the statute of limitations, Defendant is entitled to summary judgment because of Plaintiff's delay in serving Defendant's registered agent. Under Texas law, "a plaintiff must not only file suit but also use due diligence in procuring service on the defendant in order to toll the statute of limitations," and "lack of due diligence may be found as a matter of law if the plaintiff offers no excuse . . ., or if the plaintiff's excuse conclusively negates diligence." *Saenz v. Keller Indus. of Tex., Inc.*, 951 F.2d 665, 667 (5th Cir. 1992) (citations omitted). Here, Plaintiff filed suit on December 9, 2021. Mot. 10; Pl.'s Br. 34. The citation issued on December 13, 2021. *Id.* Plaintiff provided the Petition and citation to the process server on January 7, 2022, and the process server served Defendant's registered agent on January 10, 2022. *Id.* All told, approximately one month elapsed between filing and service. As Plaintiff points out, the Christmas and New Year's holidays occurred during that

---

[6] The Court also notes that the case law cited by Defendant comes from the insurance claim denial context and thus is not directly applicable. Moreover, despite Defendant's argument to the contrary, most of the cases cited by Defendant state that "a cause of action accrues when the insurer *sends* a decision letter to the insured." *Hames v. Safeco Ins. Co. of Ind.*, No. 4:20-CV-01167-P, 2021 WL 5936907, at *2 (N.D. Tex. Aug. 6, 2021) (emphasis added); *see also Fisher v. Primerica Life Ins. Co.*, No. 1:17-CV-382, 2019 WL 850950, at *6 (E.D. Tex. Jan. 9, 2019) ("The court concludes that . . . Fisher's extra-contractual claims accrued on April 20, 2015, the date Primerica sent the initial denial letter."); *Smith*, 932 F.3d at 313, 316 (concluding that claim accrued on the date the insurer sent an unambiguous denial letter). As stated above, Defendant provides no evidence regarding the date on which it sent the December 6 letter.

month. Thus, genuine issues of material fact exist regarding Plaintiff's diligence. *See, e.g.*, *Zamora v. Tarrant Cnty. Hosp. Dist.*, 510 S.W.3d 584, 591-92 (Tex. App.—El Paso 2016, pet. denied) (finding fact issue as to diligence where no attempt at service was made for twenty-eight days, but that period included eight weekend days, Christmas, New Year's, and Chanukah); *Cooper v. Balderas*, No. 08-00-00076-CV, 2001 WL 925772, at *5 (Tex. App.—El Paso Aug. 16, 2001, pet. denied) ("We believe a fact question exists as to . . . whether a month's delay in service (particularly during the holidays) might be considered reasonable by a jury.").

In sum, the Court finds that a fact issue remains regarding whether Plaintiff's claims are barred by the statute of limitations. Therefore, the Court declines to grant summary judgment on this basis.

### iv.     *Texas Insurance Code*

The Court next turns to Defendant's remaining arguments regarding Plaintiff's Texas Insurance Code claims. Defendant moves for summary judgment on these claims because Plaintiff failed to provide pre-suit notice and because there is no genuine issue of material fact regarding the merits of the claims.

Under the Texas Insurance Code, plaintiffs must provide written pre-suit notice advising putative defendants of the specific complaint and the amount of actual damages and expenses. TEX. INS. CODE § 541.154(b). If a defendant does not receive such notice, the defendant may file a plea in abatement not later than the thirtieth day after the date on which the defendant files its answer. *Id.* § 541.155(a). Defendant has neither requested abatement nor pointed the Court to any authority requiring it to take any action with respect to Plaintiff's requested statutory damages at the summary judgment stage. The Court denies Defendant's Motion on this ground.

Plaintiff brings claims for unfair acts under Chapter 541 of the Texas Insurance Code, along with claims for misrepresentations under Texas Insurance Code Sections 541.051(1) and (5) and 541.061(1), (2), and (3). The claims for unfair acts under Chapter 541 are largely the same as Plaintiff's breach of contract claims, and the Court finds that a genuine dispute of material fact remains as to these claims.

The bases for Plaintiff's claims under Texas Insurance Code Sections 541.051(1) and (5) and 541.061(1), (2), and (3) are two-fold. First, Plaintiff contends that Defendant made material misrepresentations in the 2019 Annual Report that: (1) the Policy would remain in effect until at least July 3, 2021, if Plaintiff continued to make premium payments; and (2) the Policy was and would be in good standing regardless of payments. Compl. ¶¶ 49-50. Second, Plaintiff claims Defendant misrepresented that the grace period would not expire until December 11, 2019. *Id.* ¶ 49.

Sections 541.051(1) and (5) prohibit making misrepresentations with respect to a policy and making misrepresentations for the purpose of inducing or that tend to induce the policyholder to allow the policy to lapse. Sections 541.061(1), (2), and (3) prohibit insurers from misrepresenting policies by making untrue statements of material fact, failing to state a necessary material fact, and making a statement that would mislead a reasonable person to a false conclusion of a material fact. To establish a claim under any of these provisions, Plaintiff must prove "reliance on the misrepresentation to [his] detriment" and causation. *See Gant v. State Farm Lloyds*, No. 3:21-CV-2164-B, 2022 WL 254353, at *4 (N.D. Tex. Jan. 27, 2022) (citing, among other sources, *Partain v. Mid-Continent Specialty Ins. Servs., Inc.*, 838 F. Supp. 2d 547, 558-59 (S.D. Tex. 2012), *aff'd sub nom. Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014)).

As to the claim based on the 2019 Annual Report, Defendant is entitled to summary judgment because Plaintiff has not identified any misrepresentation made in the Report. Plaintiff focuses only on the portion of the report that represents that "based upon current assumptions, your policy will remain in force until . . . 07/03/2021 with future premiums." Def.'s App. 58. But that is only half of the relevant sentence. The entire line reads: "***Assuming any loan balance is repaid***, no withdrawals are taken or increases made, and, based upon current assumptions, your policy will remain in force until . . . 07/03/2021 with future premiums." *Id.* (emphasis added). And the same report shows unpaid loans in the amount of $22,510.09. *Id.* Plaintiff also ignores entirely the October 22, 2019, letter, which warned him that the Policy had entered a grace period. *See* Def.'s App. 42. Plaintiff neither puts forth evidence that he repaid the loan balance nor explains why the Court should disregard the plain caveat to the statements made in the 2019 Annual Report.

Plaintiff instead attacks the Annual Report itself, arguing that it has not been properly authenticated and that the calculations it contains are inadmissible hearsay. But Plaintiff goes on to acknowledge that Karen Ensley "received and reviewed the 2019 Annual Report" and quotes directly from the document. Pl.'s Br. 5. And Plaintiff submitted an identical version of the 2019 Annual Report, containing the relevant language, in connection with his state-court petition. *See* ECF No. 1-3 at 18. The Court finds that the 2019 Annual Report has been adequately authenticated under Federal Rule of Evidence 901. As to the hearsay argument, the calculations in the 2019 Annual Report are largely irrelevant to the Court's holding.[7] And the relevant language—the caveat that the representations in the report were based on the assumption that any loan balance

---

[7] To the extent Plaintiff challenges the calculation of the unpaid loan amount, the precise amount of the loan is not relevant. Plaintiff acknowledged in his deposition that he did in fact take out a loan in the maximum amount allowed under the Policy, *see* Def.'s App. 12; *see also id.* at 78, and has put forth no evidence that the loan was paid off by the end of 2019, *see id.* at 88 (Karen Ensley confirming that "at no point in time after January 3, 2019, did either [she] or [Plaintiff] take any steps to repay all or part of th[e] unpaid loan balance").

was repaid—is not being offered for the truth of the matter asserted but rather to show that Plaintiff

had notice of the requirements for keeping the Policy in effect. *See United States v. Cent. Gulf

Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984) ("Evidence introduced to prove merely that notice

was given is not offered to prove the truth of the matter asserted therein . . . ."). Plaintiff cannot

cherry pick the language from the 2019 Annual Report that supports his argument while attacking

as hearsay the portions that do not. The Court overrules Plaintiff's objections to the 2019 Annual

Report.

Finally, as to the claim based on the length of the grace period, that claim fails because the

alleged misrepresentation was not a producing cause of Plaintiff's damages. "To recover under

§§ 541.051 and 541.061 for the alleged misrepresentation, [Plaintiff] must prove that it was a

producing cause of damages." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F. Supp. 2d 801, 813

(N.D. Tex. 2010). "Producing cause requires that the acts be both a cause-in-fact and a substantial

factor in causing the injuries." *Id.* at 814 (internal quotation marks and citation omitted). The

evidence conclusively proves that Plaintiff was unaware that the grace period had expired until

January 1, 2020. *See* Def.'s App. 93, 95-96. Thus, Plaintiff could not have relied to his detriment

on the representation that the Policy would remain in force until December 11, 2019.

For the foregoing reasons, Defendant is not entitled to summary judgment on Plaintiff's

unfair acts claim under Texas Insurance Code Chapter 541, but is entitled to summary judgment

on Plaintiff's claims under Texas Insurance Code Sections 541.051(1) and (5) and 541.061(1), (2),

and (3).

> v.    *Texas Deceptive Trade Practices Act*

As to Plaintiff's DTPA claims, Defendant also moves for summary judgment on these

claims because Plaintiff failed to provide pre-suit notice and because there is no genuine issue of

material fact regarding the merits of the claims. Because the latter ground is dispositive, the Court will not consider the alleged failure to provide pre-suit notice.

The Court finds that Defendant is entitled to summary judgment on the merits of Plaintiff's DTPA claims. The elements of a DTPA claim are: (1) the plaintiff was a consumer; (2) the defendant engaged in false, misleading, or deceptive acts listed in Texas Business and Commerce Code Section 17.46(b)'s "laundry list" of acts or engaged in an unconscionable action or course of action; and (3) the violation or action was a producing cause of the plaintiff's injury. *Crown Distrib. LLC v. Peacefull Choice Distrib. LLC*, No. 3:20-CV-3404-K, 2023 WL 1997927, at *8 (N.D. Tex. Jan. 27, 2023) (quoting *Huynh v. Walmart Inc.*, 30 F.4th 448, 453 (5th Cir. 2022)).

Defendant does not dispute that Plaintiff is a consumer. In the Second Amended Complaint, Plaintiff alleges that Defendant engaged in numerous acts from the DTPA's "laundry list" and also "engag[ed] in one or more unconscionable actions or courses of action to the detriment of Plaintiff." Compl. ¶ 66. However, Plaintiff makes only two specific factual allegations: (1) "Defendant assigned underwriters to obtain favorable, results-oriented reports, and to assist Defendant in denying renewal or reinstatement of Plaintiff's life insurance policy," *id.* ¶ 66(f); and (2) Defendant's representations in the 2019 Annual Report "were radically different from the position Defendant took a mere ten months later and which Defendant currently maintains," *id.* ¶ 69. Plaintiff does not—either in the Second Amended Complaint or in the summary judgment briefing—point to any other facts supporting his DTPA claims, and the Court need not sift through Plaintiff's pleadings or the record to find other possible bases for such claims. *See, e.g., Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." (citation omitted)).

As an initial matter, Plaintiff only argued in his Response that his DTPA claim is not barred by limitations and did not address the merits of this claim. "Once a proper motion has been made, the nonmoving parties may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial." *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 975 (E.D. Tex. 2004). Plaintiff has neither presented evidence nor set forth specific facts showing that a genuine issue exists for trial. Thus, Plaintiff has abandoned his DTPA claims. *See Arias v. Wells Fargo Bank, N.A.*, No. 3:18-CV-00418-L, 2019 WL 2514998, at *6 (N.D. Tex. June 18, 2019) (holding the plaintiff had abandoned one ground as a basis for his DTPA claim by failing to respond to the defendant's arguments or offer any summary judgment evidence); *Foster v. Ocwen Loan Servicing L.L.C.*, No. 1:09-CV-701, 2011 WL 13216961, at *1 (E.D. Tex. Jan. 31, 2011) ("In the plaintiffs' response to the motion for summary judgment, they do not address their causes of action for breach of express and implied warranties under the DTPA and appear to have abandoned these grounds for recovery.").

Even if Plaintiff had not abandoned his claims, however, Defendant would be entitled to summary judgment. As to Plaintiff's claim regarding Defendant's assignment of its underwriters, Defendant has both put forth evidence supporting its reasons for declining to reinstate the Policy and has pointed to the lack of evidence supporting Plaintiff's claim. In his Response, Plaintiff does not present a shred of evidence to support this claim. Nowhere in Plaintiff's briefing or appendix does Plaintiff address Defendant's assignment of its underwriters or those underwriters' performance of their duties. To the extent this claim could be construed as a more general attack on Defendant's refusal to reinstate the Policy, that claim would also fail for lack of evidence, as set forth below. *See infra* § III(B)(vi).

As to Plaintiff's claim regarding the 2019 Annual Report, Plaintiff alleges in the Second Amended Complaint that Defendant represented in the report that the "status of [the] Policy was satisfactory" and that "the Policy did not require additional payments to remain in effect." Compl. ¶ 69. As discussed in detail above, Plaintiff does not address Defendant's argument, supported by the plain language of the 2019 Annual Report, that the representations in the report were based on the "assum[ption] [that] any loan balance is repaid." Def.'s App. 58; *see supra* § III(B)(iv). Plaintiff neither puts forth evidence that he repaid the loan balance nor explains why the Court should disregard the plain language of the 2019 Annual Report. Because the Court finds that the 2019 Annual Report, read as a whole, does not contain the misrepresentations Plaintiff alleges, there is no genuine issue of material fact regarding Plaintiff's DTPA claim.

For the foregoing reasons, Defendant is entitled to summary judgment on Plaintiff's DTPA claims because Plaintiff has abandoned these claims and/or because there is no genuine issue of material fact regarding these claims.

> vi.      *Breach of the Duty of Good Faith and Fair Dealing*

Finally, the Court addresses Plaintiff's bad faith claim. Plaintiff alleges that (1) Defendant breached its duty when it failed to adequately notify Plaintiff of premium changes, the Policy's alleged depleted cash value, and the Policy's pending lapse; (2) Defendant breached its duty by failing to proceed with automatic withdrawals until Plaintiff was notified of the deficit and given an opportunity to make the requisite payment; and (3) Defendant breached its duty when it failed to reinstate the Policy.

Defendant first argues that it owed no duty to Plaintiff because it never had to adjudicate a claim for benefits under the Policy. This argument ignores the Texas Supreme Court's holding that "a cause of action for breach of the duty of good faith and fair dealing exists when the insurer wrongfully cancels an insurance policy without a reasonable basis." *Union Bankers Ins. Co. v.*

*Shelton*, 889 S.W.2d 278, 283 (Tex. 1994). As the court noted, "a failure to extend the duty of good faith and fair dealing to the cancellation of an insurance policy would allow insurers to avoid bad faith liability by cancelling the entire policy rather than denying a single claim." *Id.* Viewing all evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, the Court finds that genuine issues of material fact exist that preclude the Court from granting the Motion as to Plaintiff's breach of the duty of good faith and fair dealing claim, to the extent it is predicated on cancellation of the Policy.

But Plaintiff also alleges that Defendant breached its duty to deal fairly and in good faith with Plaintiff when Defendant refused to reinstate the Policy. Even assuming the Texas Supreme Court would recognize a duty of good faith and fair dealing in the reinstatement context, Plaintiff does not address the merits of his claims based on failure to reinstate anywhere in his briefing, and he did not submit any evidence supporting these claims. As previously stated, once a party moves for summary judgment, the party resisting summary judgment "must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial." *Thompson*, 344 F. Supp. 2d at 975. Plaintiff has not done so, and he has abandoned claims based on Defendant's refusal to reinstate the Policy. By contrast, Defendant submitted evidence that it denied reinstatement because of "information obtained in the medical records . . . to include coronary artery disease," "[m]emory loss and medication of Namenda," and "[a]lcohol abuse history with medication of campral." Def.'s App. 51. Defendant also submitted evidence that Plaintiff was warned, by way of the application for reinstatement, that reinstatement would not take effect unless Defendant "receive[d] all premiums and any other amounts due." *Id.* at 48. The evidence shows that Plaintiff never paid the outstanding amounts due. *Id.* at 88, 95. Thus, even if Plaintiff has not

abandoned this claim, Plaintiff has failed to show any bad faith on Defendant's part in declining to reinstate the Policy.

For these reasons, Defendant is entitled to summary judgment on Plaintiff's claim for breach of the duty of good faith and fair dealing to the extent it is predicated on denial of reinstatement, but not to the extent it is predicated on cancellation of the Policy.

## IV.      CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant Genworth Life and Annuity Insurance Company's Motion for Partial Summary Judgment [ECF No. 20]. The Court **GRANTS** the Motion as to Plaintiff's promissory estoppel, DTPA, and Texas Insurance Code Sections 541.051(1) and (5) and 541.061(1), (2), and (3) claims. The Court also **GRANTS** the Motion as to Plaintiff's claim for breach of the duty of good faith and fair dealing, but only to the extent that claim is based on denial of reinstatement. These claims are **DISMISSED WITH PREJUDICE**. The Court **DENIES** the Motion as to Plaintiff's breach of contract, equitable relief, and remaining Texas Insurance Code Chapter 541 claims and **DENIES** the Motion as to Plaintiff's claim for breach of the duty of good faith and fair dealing, to the extent such claim is based on the cancellation of the Policy.

**SO ORDERED.**

SIGNED March 22, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**